IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38157-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSHUA ALAN CONNELLY, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Joshua Connelly challenges his conviction for escape from community custody on the basis that the crime constitutes an alternative means case and the superior court failed to deliver a jury unanimity instruction. Because we conclude escape from community custody does not comprise an alternative means crime, we reject Connelly's contention and affirm his conviction.

FACTS

We take the facts from the trial testimony of Community Custody Officer (CCO)

Travis Hurst, the only testifying witness at trial.

Joshua Connelly served a sentence on community custody. His community custody conditions required him to meet with CCO Travis Hurst every other week. During their February 26, 2020 meeting, Hurst reminded Connelly of their next meeting scheduled for March 12 and gave Connelly a business card with the date and time of the next appointment written on the back.

On March 6, 2020, CCO Travis Hurst visited Joshua Connelly's listed address to inquire why Connelly had absented his chemical dependency classes. Connelly lived then in a small, uninsulated shed. Connelly replied that he lacked transportation to the classes. Hurst referred Connelly to Special Mobility Services for rides to and from appointments. CCO Hurst verbally reminded Connelly of the March 12 appointment.

When March 12 arrived, Joshua Connelly failed to report to the Ferry County Jail for the scheduled meeting. CCO Travis Hurst called Connelly's phone number, received no response, and left a voicemail directing Connelly to return the call. Hurst also called Connelly's girlfriend, Marie Ocampo, who said that Connelly had missed his ride into town for the meeting. Hurst issued a Department of Corrections arrest warrant for Connelly. Hurst exerted no effort to physically locate Connelly. Hurst next saw Connelly on May 20, 2020, when Connelly was in custody.

PROCEDURE

The State of Washington charged Joshua Connelly with escape from community

2

custody and an aggravator for committing the crime shortly after release from

incarceration. The superior court charged the jury:

> To convict the defendant of Escape from Community Custody, as charged in Count 1, each of the following elements of the crime must be proven beyond a reasonable doubt:
> (1) That on, or between, March 6, 2020 and May 20, 2020, the defendant was an inmate in community custody;
> (2) That the defendant willfully discontinued to make himself available to the department for supervision by:
> (a) making his whereabouts unknown; or
> (b) failing to maintain contact with the department as directed by the community corrections officer; and
> (3) That any of these acts occurred in the State of Washington.
> If you find from the evidence that elements (1) and (3), and either alternative of elements 2(a) or 2(b), have been proven beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. To return a verdict of guilty, the jury need not be unanimous as to which alternative 2(a) or 2(b) has been proven beyond a reasonable doubt, as long as each juror finds that at least one alternative has been proven beyond a reasonable doubt.
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 180.

The jury returned a guilty verdict. The jury declined to find that Connelly had

committed the crime shortly after being released from incarceration.

LAW AND ANALYSIS

On appeal, Joshua Connelly argues (1) that the jury instruction concerning the

crime of escape from community custody improperly failed to require juror unanimity as

to the alternative means proven and (2) insufficient evidence supported the first

3

alternative that Connelly made his whereabouts unknown. Because we reject the argument that the crime of escape from community custody constitutes an alternative means offense, we do not reach Connelly's second contention.

An alternative means crime is one in which the legislature provided that the State may prove the proscribed criminal conduct in a variety of ways. *State v. Barboza-Cortes*, 194 Wn.2d 639, 643, 451 P.3d 707 (2019). Deciding whether a statute creates an alternative means crime is a judicial question of statutory interpretation. *State v. Barboza-Cortes*, 194 Wn.2d 639, 643 (2019).

We begin our review of whether a statute creates alternative means crimes by analyzing the language of the criminal statute at issue. *State v. Barboza-Cortes*, 194 Wn.2d 639, 643 (2019). RCW 72.09.310, the escape from community custody statute, reads:

> An inmate in community custody who willfully discontinues making himself or herself available to the department for supervision by making his or her whereabouts unknown or by failing to maintain contact with the department as directed by the community corrections officer shall be deemed an escapee and fugitive from justice, and upon conviction shall be guilty of a class C felony under chapter 9A.20 RCW.

Joshua Connelly wisely contends that use of the disjunctive "or" in RCW 72.09.310 creates two alternative means to commit the crime of escape from community custody: (1) making one's whereabouts unknown and (2) failing to maintain contact with the department as directed by the community custody officer. The State

counters that these "alternatives" compose nuances of one criminalized act: a willful discontinuance of making oneself available to the department for supervision.

Use of the disjunctive "or" does not necessarily create alternative means. *State v. Sandholm*, 184 Wn.2d 726, 734, 364 P.3d 87 (2015). Instead the statutory analysis focuses on whether each alleged alternative describes distinct acts that amount to the same crime. *State v. Peterson*, 168 Wn.2d 763, 770, 230 P.3d 588 (2010). "The more varied the criminal conduct, the more likely the statute describes alternative means." *State v. Sandholm*, 184 Wn.2d 726, 734 (2015). But when the statute describes minor nuances inhering in the same act, the more likely the various "alternatives" constitute merely facets of the same criminal conduct. *State v. Sandholm*, 184 Wn.2d at 734.

Even if the accused could accomplish the two or more enumerated acts forming the crime exclusive of the other act or acts, the crime does not necessarily qualify as an alternative means offense. In *State v. Peterson*, 168 Wn.2d 763 (2010), the Supreme Court examined whether former RCW 9A.44.130 (2003) provided alternative means constituting the crime of failure to register as a sex offender. The statute afforded three methods to accomplish the crime: (1) failing to register after becoming homeless, (2) failing to register after moving between fixed residences within a county, or (3) failing to register after moving from one county to another. To explain why these distinctions did

not create an alternative means crime, the Supreme Court compared the failure to register

statute with the crime of theft:

> The alternative means available to accomplish theft describe *distinct acts* that amount to the same crime. That is, one can accomplish theft by wrongfully exerting control over someone's property or by deceiving someone to give up their property. In each alternative, the offender takes something that does not belong to him, but his *conduct* varies significantly. In contrast, the failure to register statute contemplates *a single act* that amounts to failure to register: the offender moves without alerting the appropriate authority. His conduct is the same—he either moves without notice or he does not. The fact that different deadlines may apply, depending on the offender's residential status, does not change the nature of the criminal act: moving without registering.

*State v. Peterson*, 168 Wn.2d at 770 (emphasis in original).

Based on the reasoning in *State v. Peterson*, we hold that escape from community

custody is not a crime of alternative means. RCW 72.09.310 criminalizes an inmate in

community custody "who willfully discontinues making himself or herself available to

the department for supervision." The statute then identifies two varieties of action by

which an inmate may achieve this criminal act. The accused may either render his or her

whereabouts unknown or fail to maintain contact with the department as directed by the

community corrections officer.

Regardless of the method by which the accused commits escape from community

custody, the accused fails to appear before his community custody officer. The accused

fails to cooperate in his supervision by the Department of Corrections. Although one can

fail to contact her community custody officer without failing to expressly notify the

6

officer of her current location, the two actions compliment one another in disobedience of the community custody condition of periodically reporting to the officer.

In his reply brief, Joshua Connelly argues that this court should apply the law of the case doctrine to determine that the jury instruction requires treatment of RCW 72.09.310 as an alternative means crime. This argument undermines Connelly's assignment of error, which complains that the jury instruction failed to provide an alternative means instruction. The instruction read:

> the jury need not be unanimous as to which alternative 2(a) or 2(b) has been proven beyond a reasonable doubt, as long as each juror finds that at least one alternative has been proven beyond a reasonable doubt.

CP at 180. This instruction did not require juror unanimity as to either supposed "alternative means."

## CONCLUSION

Escape from community custody under RCW 72.09.310 does not comprise an alternative means crime. The superior court committed no instructional error. We affirm the conviction of Joshua Connelly.

No. 38157-9-III
*State v. Connelly*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Pennell, J.